UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────

TEJASH SANCHALA, AS EXECUTIVE DIRECTOR
OF THE WESTCHESTER COUNTY FAIR HOUSING
BOARD, on the complaints of Denise Saintil and Jean L.
Riviere, individually and on behalf of C.S., their child;
Tanya Rosario, individually and on behalf of D.C and
S.P., her minor children; Aura Abreu; Nicole Johnson;
Anna Avilez; and Tejash Sanchala, as Executive Director
of the Westchester County Fair Housing Board,

                              Plaintiff,

        v.

COMMUNITY HOUSING MANAGEMENT CORP.,
MADISON HOUSING DEVELOPMENT FUND
COMPANY, INC., MADISON HOUSE APARTMENTS,
LLC, JOSE FELICIANO, individually and as
Superintendent of Madison House Apartments, CINDY
MAURO, individually and as Director of Operations of
Community Housing Management Corp., and EUGENE
CONROY, individually and as President of Community
Housing Management Corp.,

                              Defendants.
----------------------------------------------------------

**COMPLAINT**

Docket No.

_____

## I.  PRELIMINARY STATEMENT

1.  Tejash Sanchala (the "Plaintiff"), as Executive Director of the Westchester

County Fair Housing Board (the "FHB"), a partner with the United States Department of

Housing and Urban Development ("HUD"), brings this action to remedy violations of the

Federal Fair Housing Act (the "Act") and the Westchester County Fair Housing Law because

everyone has the right to be free from sexual harassment and intimidation in their home. Plaintiff

alleges that, for almost seven (7) years, single female residents of Madison House Apartments

("Madison House"), located at 70 Ferris Avenue, White Plains, New York, were repeatedly

sexually harassed, victimized and preyed upon by Madison House's superintendent, Jose

Feliciano ("FELICIANO"), and subjected to retaliation when they bravely spoke out against the discrimination. Further, despite their bravery, the owners and managers of Madison House, all of whom knew or should have known about FELICIANO's abhorrent predatory campaign of harassment, discrimination and intimidation, refused to take appropriate action. The consequences were shattering. In particular, two residents allege that their daughter is a survivor of statutory rape committed by FELICIANO.

2.      Plaintiff additionally brings this Complaint on the complaints of Denise Saintil and Jean L. Riviere, individually and on behalf of C.S., their child; Tanya Rosario, individually and on behalf of D.C and S.P., her minor children, Aura Abreu; Nicole Johnson; and Anna Avilez.

3.      The FHB commences this action pursuant to election by Defendant FELICIANO to remove the matter as an administrative proceeding before the FHB, to a court of competent jurisdiction, as provided by Westchester County Fair Housing Law ("WCFHL") § 700.29(A).

4.      On December 21, 2022, the FHB authorized the Westchester County Attorney to bring this civil proceeding pursuant to WCFHL § 700.29 (A)(2).

5.      The above complainants are all represented by a single, same attorney, except Complainant Anna Avilez, who is unrepresented.

6.      Plaintiff, by and through his attorney, John M. Nonna, Esq., Westchester County Attorney, by Christopher J. Inzero, Esq., Senior Assistant County Attorney, of Counsel, complaining of defendants COMMUNITY HOUSING MANAGEMENT CORP. ("CHMC"), MADISON HOUSING DEVELOPMENT FUND COMPANY, INC. ("MHDFC"), MADISON HOUSE APARTMENTS, LLC ("MHA"), JOSE FELICIANO ("FELICIANO"), individually and as Superintendent of Madison House Apartments, CINDY MAURO  ("MAURO "),

individually and as Director of Operations of Community Housing Management Corp., and

EUGENE CONROY ("CONROY"), individually and as President of Community Housing

Management Corp. respectfully alleges upon information and belief as follows:

## II.  THE PARTIES

7.      At all times hereinafter mentioned, the County of Westchester was and is a

municipal corporation, duly organized and existing under the laws of the State of New York.

8.      At all times hereinafter mentioned, the Westchester County Human Rights

Commission (the "Commission") is a board established by § 700.08 of the Westchester County

Human Rights Law.

9.      At all times hereinafter mentioned, the FHB is a board established by § 700.24 of

the Westchester County Fair Housing Law (the "WCFHL").

10.      The FHB is constituted from the membership of the Commission, the Executive

Director of the Commission is also the Executive Director of the FHB, and the FHB operates

through the office of the Commission.

11.      CHMC is a New York corporation, with offices located at 5 West Main Street,

Suite No. 214, Elmsford, New York. CHMC manages the property identified as Madison House

Apartments ("Madison House"), which is a ninety-nine unit, low-income, government subsidized

residential apartment building located at 70 Ferris Avenue, White Plains, New York. CHMC has

managed Madison House since 1972, and also manages thirty-two (32) properties, of which

twenty-eight (28) are located in Westchester County, including Madison House.

12.      CONROY is the President of CHMC.

13.      MAURO is the Director of Operations for CHMC, and is responsible for

overseeing all of its managed properties, including Madison House. MAURO reports directly to

CONROY. MAURO directly supervises Madison House's building manager (the "building manager"), who is also a CHMC employee. The building manager is responsible for Madison House's daily operations, and supervises its maintenance staff.

14.     CHMC, CONROY, and MAURO are hereafter collectively referred to as the "Management Defendants".

15.     MHDFC is a New York not-for-profit corporation with offices located at 901 Main Street, Suite No. 300, Peekskill, New York 10566. MHDFC is the owner of Madison House.

16.     MHA is a New York limited liability company, with offices at offices at 901 Main Street, Suite No. 300, Peekskill, New York 10566.

17.     By agreement between MHDFC and MHA dated December 24, 2013, MHDFC transferred its equitable and beneficial ownership in Madison House to MHA.

18.     MHA and MHDFC are hereinafter collectively referred to as the "Owner Defendants".

19.     FELICIANO is a former CHMC employee, and was the superintendent for Madison House for the time that CHMC employed him. Upon information and belief, Feliciano is a resident of the State of New York.

20.     Madison House constitutes a "dwelling" within the meaning of § 3602 of 42 U.S.C. § 3601 *et seq*., the Federal Fair Housing Act (the "Act"), and is not exempt under the Act.

21.     Madison House constitutes a "housing accommodation" within the meaning of § 700.20 (I) of the WCFHL, and is not exempt under the WCFHL.

### III.  THE COMPLAINANTS

22.     Complainant Aura Abreu ("Abreu") is a resident of Madison House and has lived there since on or about 2012.

23.     Complainant Anna Avilez ("Avilez") is a resident of Madison House and has lived there since on or about 1980.

24.     Complainant Nicole Johnson ("Johnson") is a resident of Madison House and has lived there since on or about 2015.

25.     Complainant Tanya Rosario, and her minor children, D.C and S.P. (the "Rosario Complainants") are residents of Madison House and have lived there since on or about 2005.

26.     Complainants Denise Saintil and Jean L. Riviere, and their child C.S., (the "Saintil / Riviere Complainants") are residents of Madison House and have lived there since on or about 2014.

27.     Complainants Abreu, Avilez, Johnson, the Rosario Complainants, and the Saintil / Riviere Complainants, are hereinafter collectively referred to as the "private complainants".

28.     Complainant Tejash Sanchala ("Sanchala") is Executive Director of the FHB.

### IV.  JURISDICTION & VENUE

29.     The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1345, and 42 U.S.C. § 3612(o).

30.     The Court has supplemental jurisdiction over this action pursuant to 28 U.S.C. §§ 1367.

31.     Venue for this action is proper in this District pursuant to 28 U.S.C. § 1391, and 42 U.S.C. § 3612(o).

## V.  LEGAL AUTHORITY

**A. Federal Fair Housing Law**

32.      It is unlawful to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of, *inter alia*, a person's sex or familial status. 42 U.S.C. § 3604(b) and 24 C.F.R. § 100.50(b)(2).

33.      Discrimination under the Act includes quid pro quo sexual harassment, constituting unwelcome sexual requests or demands, where submission to the request or demand, either explicitly or implicitly, is made a condition related to the terms, conditions, or privileges of a housing accommodation, or the provision of services or facilities in connection therewith. 24 C.F.R. §100.600(a)(1).

34.      Discrimination under the Act includes hostile environment harassment, constituting unwelcome conduct which is sufficiently severe or pervasive as to interfere with a person's use or enjoyment of a dwelling, or the provision or enjoyment of services or facilities in connection therewith. 24 C.F.R. § 100.600(a)(2).

35.      It is unlawful to intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of the person having exercised or enjoyed, any right granted or protected under the Act. 42 U.S.C. § 3617.

36.      Prohibited interference, coercion or intimidation under the Act includes retaliating against any person because that person has made a complaint, testified, assisted or participated in any manner in a proceeding under the Act, or reported a discriminatory housing practice to a housing provider or other authority. 24 C.F.R. §§ 100.400(c)(5) and (c)(6).

37.     It is unlawful to otherwise make unavailable or deny a dwelling to any person, because of, *inter alia*, a person's sex or familial status. 42 U.S.C. § 3604(a)

38.      "Otherwise make unavailable" under the Act includes failing to take prompt action to correct and end a discriminatory housing practice by an employee or agent, where the person knew or should have known of the discriminatory conduct. 24 C.F.R. § 100.7(a)(1)(ii).

39.     "Otherwise make unavailable" under the Act also includes failing to take prompt action to correct and end a discriminatory housing practice by a third-party, where the person knew or should have known of the discriminatory conduct and had the power to correct it. 24 C.F.R. § 100.7(a)(1)(iii).

40.     A person is liable for a discriminatory housing practice by the person's agent or employee, regardless of whether the person knew or should have known of the conduct that resulted in the discriminatory housing practice, consistent with agency law. 24 C.F.R. § 100.7(b).

**B. Westchester County Fair Housing Law**

41.     It is unlawful to make unavailable, or otherwise deny, a housing accommodation, because of, *inter alia*, a person's actual or perceived gender, familial status, marital status, or status as a victim of sexual abuse. WCFHL § 700.21(A)(2).

42.     It is unlawful to discriminate against any person because of, *inter alia*, that person's actual or perceived gender, familial status, marital status, and/or status as a victim of sexual abuse in the furnishing of facilitates or services associated with the housing accommodation, or the use or enjoyment in connection therewith. WCFHL § 700.21(A)(4).

43.     It is unlawful to make or declare a statement which indicates, directly or indirectly, any discrimination as to a person's actual or perceived gender, familial status, marital status, or status as a victim of sexual abuse. WCFHL § 700.21(A)(5).

7

44.      It is unlawful to intimidate, threaten or interfere with any person in the exercise of any right granted in the WCFHL. WCFHL § 700.21(10).

45.      It is unlawful to intimidate, threaten, interfere with, retaliate or discriminate against, or attempt to intimidate, threaten, interfere with, retaliate or discriminate against any person in the exercise or enjoyment of, or on account of their having exercised or enjoyed, any right granted or protected by the WCFHL, or because he or she has opposed any practice forbidden under the WCFHL. WCFHL § 700.23(B)

## VI. FACTS

### A. Facts Relevant to All Madison House Residents

46.      On or about December 16, 2013, CHMC hired FELICIANO as superintendent for Madison House. FELICIANO reported directly to the building manager. At the time that CHMC hired FELICIANO, he was a member of 32BJ Service Employees International Union (the "Union").

47.      FELICIANO was married when hired. The aforementioned is noteworthy because CONROY admitted that he hires only married men as superintendents of CHMC managed buildings, because the buildings would be a "playground" for single men. CONROY stated that "it's just human nature" for an unmarried male superintendent to take advantage of female residents.

48.      Within two (2) months of CHMC hiring FELICIANO, CONROY received an anonymous letter from "A Concerned and Disgruntled Tenant", dated February 15, 2014, notifying him that "It hasn't even been 3 months that's [sic] he's been the super and already he's dating in the building."

8

49.     In a memorandum to CONROY dated May 19, 2014, the building manager informed CONROY that FELICIANO was having a romantic relationship with a resident.

50.     On June 10, 2014, CONROY received an anonymous letter notifying him that FELICIANO had a criminal record.

51.     Upon CONROY learning of same, CONROY sent FELICIANO a letter dated November 28, 2014, stating that

> [l]ying on a job application is in itself justification for termination of your employment. The owners of Madison House are on record requesting that I terminate your employment. I have persuaded them to continue your employment...

52.     In the same letter, being approximately ten (10) months after CONROY first learned that FELICIANO was engaging in inappropriate sexual relationships with Madison House residents, CONROY instructed FELICIANO to "refrain from any and all personal relationships with any residents [sic] of Madison House."

53.     CONROY further stated the following to FELICIANO in the letter:

> [e]arly in your employment a resident accused you of having an affair with a resident which ... you and your wife and you [sic] denied this [sic]. Now at a recent meeting at our office with [another tenant and her attorney, the tenant] accused you of stalking her and she did indeed have an affair with you. At the meeting the suggestion was made that [the resident] obtain an Order of Protection against you. Bottom line, one more incident of your inappropriate behavior with any resident of Madison House [sic] your employment with Madison House will be terminated."

54.     On or about December 2, 2015, CONROY received another letter from "Anonymously Concerned Tenants", informing him, that FELICIANO:

> [H]as had multiple relationships with female tenants…has preyed on these women ... [has] suppli[ed] them with illegal drugs in return for favors…[and] has the key to [their] apartments and he has been known to go into apartments without the permission of the tenant."

55.     On December 22, 2015, CONROY sent FELICIANO another written warning instructing him to 'totally refrain from engaging in any non-business [sic] relationship with any female resident of Madison House."

56.     CONROY further told FELICIANO in the December 2, 2015 letter that:

>   [I]f we find out about any future inappropriate relationship with any female resident of Madison House you will be terminated…[and]…[i]f you ever enter a tenant's apartment for any reason other than in a response to Community Housing Management Corp. Work Request Form or an emergency, you will be fired.

57.     CONROY further stated in said letter to FELICIANO that "by all rights we could fire you at this time" but elected not to terminate him.

58.     FELICIANO signed the letter agreeing that if he failed to comply with 100% of the terms of the letter his employment, he would be terminated.

59.     In a memorandum to FELICIANO dated January 23, 2017, CONROY noted:

>   As you well know [sic] on more than one occasion I have had to defend you to ... the owner of Madison House. However, defending you is getting old to say the least, [sic] over the years beginning before you worked at Madison House you have done some stupid things. Your future at Madison House and Community Housing is in your hands. I don't know how many more times I can justify your poor judgment to MHDC and MHA. Keep you F… [sic] mouth shut!

60.     On July 28, 2017, multiple residents of Madison House wrote a letter to CONROY and informed him that they believed that FELICIANO had entered their apartments without their permission. The letter also noted that FELICIANO continued to have inappropriate relationships with female residents and explicitly accused him of sexual harassment and discrimination.

61.     Upon information and belief, none of the Owner nor Management Defendants took any timely action to address the concerns stated in the July 28, 2017 letter.

10

62.     On or about May 2, 2019, a female Madison House resident wrote a letter to the building manager, complaining that FELICIANO was engaging in harassment and "endangering the welfare of a tenant."

63.     The Management Defendants admitted to the FHB during its investigation that CHMC does not have any written policies or practices regarding sexual harassment of building tenants, or sexual relationships between staff and building tenants, nor does it maintain any pertinent unwritten policies or practices at Madison House.

64.     CONROY stated that all staff are trained on fair housing, reasonable accommodations, and sexual harassment. However, several CHMC staff members stated to the FHB during its investigation that none had received any such training or instructions from CHMC on these topics.

65.     On or about May 3, 2019, the building manager wrote a memorandum to CONROY describing an April 30, 2019 altercation between FELICIANO and the same female resident, wherein FELICIANO allegedly spit on the her and threatened to assault her with a broom.

66.     The building manager immediately contacted MAURO regarding the incident, who directed the building manager to contact the security company that manages Madison House's security cameras, to obtain any video footage of the incident.

67.     The building manager told the FHB during its investigation that it believed that FELICIANO had overheard her aforementioned discussion with MAURO.

68.     The building manager contacted the security company, but was told by it that it could not retrieve the video footage because the security system was tampered with, that the

sought video footage had been deleted, and the equipment "sabotaged." The security company further told the building manager that the video system's password was changed.

69.     The building manager informed the FHB during its investigation that FELICIANO was the only person with access to the video system to change the password.

70.     On June 26, 2019, the building manager informed CONROY that the security system was not working properly despite it being repaired. She noted that she had "serious concerns with the interest and acts that Jose FELICIANO has taken with wanting to control the surveillance camera system."

71.     In multiple memos to CONROY in July 2019, the building manager noted that FELICIANO was "spending a lot of time in the camera room watching every resident [sic] movements .... ".

72.     The building manager further noted to CONROY that "FELICIANO continues to engage in sexual acts with the residents .... ", "is a threat and danger to the residents of Madison House" and that his actions were only getting worse.

73.     None of the Owner nor Management Defendants defendant took any action against FELICIANO regarding the building manager's concerns.

74.     CONROY stated that CHMC intended to terminate FELICIANO's employment in or about November 2019 for insubordination and infractions, such as renting out parking spaces and the community room to non-Madison house-residents for his personal pecuniary benefit.

75.     CONROY stated that FELICIANO, in response to such intended termination, threatened CHMC staff, requiring that the police be called. CONROY described it as an "unpleasant situation" that "got really out of hand".

76.     CONROY further stated that FELICIANO could not be terminated because his Union would not allow it.

77.     However, upon information and belief, a Union representative denied CONROY's statement, and stated that CHMC was free to terminate any employee for cause.

78.     On or about June 22, 2020, the Management Defendants notified FELICIANO that he was no longer permitted in Madison House residents' apartments following, complaints from them that FELICIANO had improperly entered their apartments.

79.     On or about July 2, 2020, CHMC terminated FELICIANO's employment.

80.     CHMC informed FELICIANO that he was terminated for the following reasons:

> [Y]our continued poor performance, failure to improve your performance after your final warning and most recently, you have been arrested for your harassment of tenants and you are the recipient of an order of protection directing you to stay away from the premises.

**B. Facts Regarding the Private Complainants**

**1. The Saintil / Riviere Complainants**

**a) Procedural History**

81.     On March 11, 2021, the U.S. Department of Housing and Urban Development ("HUD") accepted the Saintil / Riviere's Complainants' Complaint of housing discrimination under the Fair Housing Act, 42 U.S.C. 3601, *et. seq.* (the "Act").

82.     On April 6, 2021, and pursuant to a work sharing Agreement between HUD and the Commission (the "HUD / Commission Agreement") and § 810 of the Act, the Complaint was forwarded to the FHB for investigation. The Westchester County Fair Housing Law The WCFHL is substantially equivalent to the Act.

83.     On April 6, 2021 and pursuant to § 700.28(A)(1) of the WCFHL, the Saintil / Riviere Complainants filed a Verified Complaint with the FHB, alleging that Defendants violated, and were continuing to violate WCFHL §§ 700.21 and 700.23.

84.     The Saintil / Riviere Complainants allege that FELICIANO, individually and as Madison House Superintendent, engaged in a sexual relationship with their child, C.S.  for approximately two (2) years when C.S. was between fourteen and sixteen years old.

85.     Further, the Saintil / Riviere Complainants allege that the Owner and Management Defendants knew or should have known that, since at least 2014, FELICIANO engaged in inappropriate sexual relationships with multiple residents of Madison House and had been accused of sexual harassment by multiple Madison House female residents, but refused and/or failed to take any meaningful steps to address his conduct.

86.     The Saintil / Riviere Complainants further allege that the Owner and Management Defendant's failures to address FELICIANO's conduct, permitted and enabled him to repeatedly "rape" C.S. over a two-year period.

87.     On or about May 7, 2021 CHMC submitted a Position Statement in response to the Complaints.

88.     On or about May 13, 2021 FELICIANO submitted a Position Statement in response to the Complaints.

89.     On or about July 2, 2021, the Saintil / Riviere Complainants submitted a Position Statement supporting their Complaints.

90.     On September 29, 2020 and pursuant to WCFHL § 700.28(F), FHB issued a Determination and Order finding Probable Cause to support the allegations in the Complaints.

14

**b) Discrimination Against the Saintil / Riviere Complainants**

91.     The Saintil / Riviere Complainants allege that in or about 2019, FELICIANO began engaging in sexual activity with C.S. when she was fourteen years old.

92.     The Saintil / Riviere Complainants allege that FELICIANO engaged in sexual acts with C.S., including intercourse, in various areas of Madison House, many times over a two-year period.

93.     The Saintil / Riviere Complainants allege that FELICIANO would use his access to vacant Madison House apartments to get C.S. alone to engage in sexual acts with her.

94.     The Saintil / Riviere Complainants allege that FELICIANO would enter the apartments of Madison House residents he knew were away, to engage in sexual acts with C.S. in those apartments.

**2. The Rosario Complainants**

**a) Procedural History**

95.     On June 10, 2020 and pursuant to WCFHL § 700.28(A)(1), the Rosario Complainants filed a Verified Complaint with the FHB alleging that Defendants violated, and were continuing to violate WCFHL §§ 700.21 (A) and 700.23 (B).

96.     Pursuant to the HUD / Commission Agreement and § 810 of the Act, the Complaint was forwarded to, and dual-filed with HUD on June 17, 2020.

97.     Pursuant to the HUD / Commission Agreement, both Complaints were concurrently investigated by the FHB.

98.     The Rosario Complainants allege that FELICIANO, individually and as Madison House Superintendents, subjected Tanya Rosario to sexual harassment, and discrimination based

15

on her gender as female, her marital status as single, and discriminated against D.C., Tanya

Rosario's child, pursuant to the child's status as a victim of sexual abuse.

99.     The Rosario Complainants additionally allege that FELICIANO retaliated against

them because they opposed and complained of his discriminatory practices.

100.    Lastly, the Rosario Complainants allege that the Owner and Management

Defendants knew or should have known about FELICIANO's harassment and discrimination,

and failed to take action to stop it.

101.    On or about August 31, 2020, CHMC and MAURO submitted a Position

Statement in response to the Complaints.

102.    On or about September 18, 2020, FELICIANO submitted a Position Statement in

response to the Complaints.

103.    On September 24, 2020, pursuant to WCFHL § 700.28 (B), Rosario Complainants

filed an Amended Verified Complaint to add MHA as a Respondent.

104.    On September 25, 2020 and pursuant to WCFHL § 700.28 (F), the FHB issued a

Determination and Order finding Probable Cause as to the allegations in the Complaints.

**b) Discrimination Against the Rosario Complainants**

105.    The Rosario Complainants allege that from on or about 2018, FELICIANO made

the following statements to Tanya Rosario:

      a. You should let me eat your pussy;

      b. I don't even have to put it in, I'll just eat you all up;

      c. When we cuddle…it will stay between you and me; and

      d. If you ever need a break, you should come to 3M and lay in my kind [sic] size

        bed

16

106.    The Rosario Complainants alleges that on or about 2018, FELICIANO invited Tanya Rosario to go to Puerto Rico with him, and told her "it would stay between us."

107.    Tanya Rosario interpreted FELICIANO's above statements to be an unwelcome invitation for her to engage in sexual activity with him.

108.    The Rosario Complainants allege that on or about September 6, 2019, FELICIANO approached Tanya Rosario while she was in the building's laundry room with her children, and showed her videos of him receiving fellatio, and bragged about his sexual prowess.

109.    The Rosario Complainants allege that on or about November 2019, FELICIANO entered their apartment when they were not home, and without their permission.

110.    The Rosario Complainants allege that FELICIANO monitored Tanya Rosario's comings and goings from Madison House to learn her schedule, and would frequently be in front of her door when she returned home.

111.    The Rosario Complainants allege that FELICIANO would place himself between them and their door, and would lurk by their door for prolonged periods of time for no reason while they were home.

112.    The Rosario Complainants allege that D.C., Tanya Rosario's child, is a victim of sexual abuse.

113.    The Rosario Complainants alleges that on or about September 2019, Tanya Rosario informed FELICIANO of D.C.'s aforementioned status on their belief that FELICIANO, as Madison House Superintendent, should know that they had a temporary order of protection prohibiting a specific person from entering Madison House, so that he could prevent that person from entering.

114.    The Rosarios Complainants allege that FELICIANO thereafter informed a number of other Madison House residents of D.C. 's status as a victim of sexual abuse, and made a number of disparaging comments about D.C.

115.    The Rosario Complainants allege that on or about August 21, 2019, they began complaining to the building manager about FELICIANO's behavior.

116.    Tanya Rosario alleges that in September 2019, she spoke directly to MAURO about FELICIANO's behavior, including her claim that he was sexually harassing her.

117.    The building manager told the FHB during its investigation that Tanya Rosario first reported FELICIANO's conduct in or around August 2019, at which time she provided several text messages from FELICIANO asking her to go to bed with him.

118.    The building manager told the FHB during its investigation that she shared with MAURO, who was her supervisor, the text messages from FELICIANO, and sent the text messages to the Union.

119.    The building manager told the FHB during its investigation that MAURO verbally told FELICIANO to "stay away" from Tanya Rosario, but admitted that neither she nor MAURO took any other action or conducted any further investigation into her allegations.

120.    The building manager admitted to the FHB that Tanya Rosario subsequently reported to her that FELICIANO continued to sexually harass her. The building manager told the FHB that each time Tanya Rosario would make such reports about FELICIANO, she would tell Tanya Rosario to put her complaints in writing.

121.    The building manager admitted to the FHB that she did not investigate or take any other action on Tanya Rosario's complaints and is unaware of any other CMHC employee who did.

122.    MAURO admitted to the FHB that Tanya Rosario contacted her directly regarding FELICIANO's conduct, but that neither she nor her staff followed up on these reports. MAURO further admitted that "there was no reason, in particular, that [CMHC] didn't follow up. They just didn't."

123.    CONROY admitted to the FHB that he was aware of Tanya Rosario's complaints, but did not follow up on them.

124.    CONROY told the FHB that he believed that it was "sufficient" to have the building manager speak with FELICIANO about Tanya Rosario's allegations, instead of investigating them. He further admitted to the FHB that no one memorialized Tanya Rosario's complaints.

125.    Beginning on or about November 13, 2019, however, Tanya Rosario began writing letters to CONROY and CHMC staff, detailing FELICIANO conduct towards her.

126.    MAURO, CONROY and the building manager all instructed Tanya Rosario to document her complaints and go to the police.

127.    MAURO asserted that she believed that there was no other action for management to take because FELICIANO's behavior was "only" criminal.

128.    Management Defendants, and the building manager, all initially insisted that they never heard any other resident make any other sexual harassment complaints against any staff until they received Tanya Rosario's written complaint, which they assert they only received on November 27, 2019.

129.    However, the building manager later admitted that other female residents had complained about FELICIANO before Tanya Rosario did so.

130.    CONROY insisted that prior to Tanya Rosario's complaint, he never had an issue "like this," and attributed CHMC's response to Tanya Rosario's complaints, as "benign neglect."

131.    CONROY admitted that Tanya Rosario's complaints of sexual harassment were "not on his mind" because there were so many other issues with FELICIANO's behavior.

132.    The Rosario Complainants allege that after they complained to the Owner and Management Defendants about FELICIANO's conduct, FELICIANO then intimidated Tanya Rosario and threatened to damage her vehicle.

133.    The Rosario Complainants allege that Tanya Rosario's car had two flat tires shortly after she complained to the Owner and Management Defendants about FELICIANO.

134.    The Defendants denied all allegations of discrimination and retaliation.

**3. Abreu**

**a) Procedural History**

135.    On August 31, 2020 and pursuant to WCFHL § 700.28(A)(1), Abreu filed a Verified Complaint with the FHB alleging that Defendants violated, and were continuing to violate WCFHL §§ 700.21 and 700.23.

136.    Pursuant to the HUD / Commission Agreement and § 810 of the Act, the Complaint was forwarded to, and dual-filed with HUD on September 8, 2020.

137.    Pursuant to the HUD / Commission Agreement, both Complaints were concurrently investigated by the FHB.

138.    Abreu alleges that Defendants denied her equal terms, conditions, services and/or facilities associated with housing and threatened to evict her because of her gender as female.

139.    In addition, Abreu alleges that FELICIANO subjected her to harassment, including sexual harassment, based on her female gender, and threatened her with physical harm.

140.     Abreu further alleged that FELICIANO subjected her to retaliation because she refused his unwanted sexual advances and reported his acts of harassment and discrimination to the Owner and Management Defendants.

141.     Lastly, Abreu alleges that the Owner and Management Defendants knew or should have known about FELICIANO's harassment and discrimination and failed to take appropriate action to stop it.

142.     On or about September 30, 2020, Defendant FELICIANO submitted a Position Statement in response to the Complaints.

143.     On or about October 2, 2020, MHDFC submitted a Position Statement in response to the Complaints.

144.     On or about October 14, 2020, CHMC submitted a Position Statement in response to the Complaints.

145.     On December 14, 2020 and pursuant to WCFHL § 700.28(B), Abreu filed an Amended Verified Complaint to add MHA as a Respondent.

146.     On March 16, 2021 and pursuant to WCFHL § 700.28 (B), Abreu filed a second Amended Verified Complaint to add CONROY, individually and as President of CHMC, as a Respondent.

147.     On September 25, 2020 and pursuant to WCFHL § 700.28(F), a Determination and Order was issued, finding Probable Cause to support the above allegations in the Complaints.

**b) Discrimination Against Abreu**

148.     Abreu alleges that FELICIANO began sexually harassing her in 2013, almost as soon as he began working at Madison House, and that she rejected his advances.

21

149.    Abreu alleges that FELICIANO made inappropriate comments to her, such as "you have nice breasts".

150.    Abreu alleges that on or about November 2016, FELICIANO stepped towards her with a raised hand, and stated "[y]ou don't know me. You don't know what I'm capable of."

151.    Abreu alleges that on or about November 2016, FELICIANO told her that she was a "pig" and a "bitch".

152.    By letter dated November 20, 2016, Abreu's son notified the Owner Defendants of FELICIANO's above conduct towards, and statements to, Abreu.

153.    On November 30, 2016, the Owner Defendants notified CONROY of the November 20, 2016 letter, and demanded he investigate the allegations and terminate FELICIANO. CONROY, in turn, instructed MAURO and the building manager to conduct an investigation.

154.    MAURO and the building manager sent CONROY a memorandum dated December 21, 2016, attributing "the real basis of [Abreu's] complaints" to a two-year old dispute over parking." The memo concluded "there is always two sides to every story and then the 'middle'."

155.    CONROY decided not to terminate FELICIANO at that time.

156.    CONROY forwarded the December 21, 2016 memorandum to the President of MHDFC by email. The email from CONROY, in part, stated:

> Please read this memo regarding Jose the Superintendent at Madison House who has and is doing an excellent job. There are some very difficult tenants at Madison House including [Abreu]. For the record I would hire Jose [FELICIANO] again for Madison House or any of my properties.

157.    CONROY told the FHB that Madison House is a "tough building", and he needed a "strong" superintendent, and felt that FELICIANO was "strong",

158.    Abreu alleges that on or about July 2017, FELICIANO entered her apartment without her permission, and that when she confronted him about it, he stated:

> Go fuck yourself! You can say and do whatever you want, but you're the next one who is leaving this building. I am close with the people who manage and own this building. We already kicked one out…and you're the next one, bitch.

159.    By letter dated July 28, 2017, Abreu's son notified CONROY of the above incident.

160.    Abreu's son also stated in the July 28, 2017 letter that FELICIANO had called him a "fag" and a "tranny".

161.    Abreu alleges that on or about December 2017, FELICIANO saw her in the building's elevator, and stated:

> "[l]ook who just walked into the building- the biggest piece of trash in the place. The one with the biggest mouth who sends letters to the management, because she says she's afraid of living here with me around."

162.    Abreu alleges that also on or about December 2017, FELICIANO called her "trash" as she exited the elevator, and stated to her, "I'm still here, bitch".

163.    By letter dated December 27, 2017, Abreu's son notified CONROY of the above two incidents.

164.    Abreu's son alleges that when he confronted FELICIANO about the encounter, FELICIANO said, "[g]o on keep sending letters to the office ... you're both liars and bad things happen to liars."

165.     On or about August 2018, Abreu alleges that FELICIANO called her a "dirty bitch" upon Abreu propping the door open to unload her groceries.

166.     By letter dated August 16, 2018, Abreu's son notified MAURO and the building manager of the above incident.

167.     Abreu alleges that she overheard FELICIANO tell another tenant about her, by which he stated, "I'm tired of that bitch, sending cards to the office. Who does she think she is?"

168.     Abreu alleges that on or about October 3, 2018, FELICIANO refused to ride the elevator with her and told another tenant at said time that "he doesn't ride [the elevator] with certain people".

169.     By letter dated October 3, 2018, Abreu's son notified the building manager of the above incident.

170.     Abreu alleges that on or about June 2020, FELICIANO saw her speaking with a member of the building staff in the parking garage and began yelling "careful with that one".

171.     Abreu alleges that she responded "leave me the fuck alone", whereby FELICIANO responded "your mother is a bitch…I'm going to drag you around the block."

172.     Abreu alleges that one day following the above incident, FELICIANO confronted her in the laundry room and said "you better watch out because I'm going to have people drag you all around [the block] for being a stupid bitch."

173.     By letter dated June 15, 2020, Abreu's son notified CHMC of the above two incidents.

**3. Johnson**

**a) Procedural History**

174.    On August 31, 2020, pursuant to WCFHL § 700.28(A)(1), Johnson filed a Verified Complaint with the FHB alleging that Defendants violated, and were continuing to violate WCFHL §§ 700.21 and 700.23

175.    Pursuant to the HUD / Commission Agreement and § 810 of the Act, the Complaint was forwarded to, and dual-filed with HUD on September 9, 2020.

176.    Pursuant to the HUD / Commission Agreement, both Complaints were concurrently investigated by the FHB.

177.    Johnson alleged that FELICIANO subjected her to repeated harassment, including unwanted sexual harassment, by making "strange and sexually intimidating" statements to her based on her female gender.

178.    Complainant further alleged that FELICIANO retaliated against her because she complained about discrimination or refused his sexual advances by speaking ill of her and her male associate to other tenants.

179.    Lastly, Johnson alleged that the Owner and Management Defendants knew or should have known about FELICIANO's harassment and discrimination, but ignored her complaints and failed to take appropriate action to stop it.

180.    On or about October 2, 2020, CHMC submitted an Answer to the Complaint

181.    On or about October 14, 2020, CHMC submitted a Position Statement in response to the Complaint.

182.    On December 14, 2020, pursuant to § 700.28(B), Johnson filed an Amended Verified Complaint to add MHA as a Respondent.

183.    On March 11, 2021 and pursuant to WCFHL § 700.28(B), Johnson filed an Amended Verified Complaint to add CONROY, individually and a President of CHMC, as a Respondent.

184.    On March 12, 2021, and pursuant to WCFHL § 700.28(F) the FHB issued a Determination and Order finding Probable Cause to support the above allegations in the Complaints.

**b) Discrimination Against Johnson**

185.    Johnson alleges that FELICIANO approached her in a "strange and sexually intimidating way" since she moved into Madison House on or about April 2015, and that his comments became steadily more flirtatious over time.

186.    Johnson alleges that FELICIANO would make suggestive statements to her, either verbally or by text message.

187.    Some of the statements from FELICIANO to Johnson, together with the approximate dates of each, are as follows:

   a. On or about November 2019 - "Hey Miss"; "I got you"; "(i]f you need anything you know I got you"

   b. On or about January 2020 – "[w]hen (your daughter] goes to sleep let me know so I can tuck you in".

   c. On or about November 2019 - "I should have went to Florida with you".

   d. On or about May 2020, "I will always be in [your daughter's] life".

188.    Johnson alleges that she understood FELICIANO's comments to be unwelcome sexual advances and they made her uncomfortable.

189.    Johnson alleges that FELICIANO's behavior became aggressively hostile when he saw her exit her apartment with a male companion.

190.    Johnson alleges that FELICIANO approached her sister, who is also a Madison House resident, during the week of May 4, 2020, and stated that he was "mad" at [Johnson] because she was "messing with that clown". Johnson alleges that FELICIANO was referring to her male companion in said statement.

191.    Johnson alleges that FELICIANO spoke about her in a derogatory manner to several other Madison House tenants.

192.    By letter from Johnson to the building manager dated May 20, 2020, Johnson expressed concern for her and her daughter's safety regarding FELICIANO's conduct when seeing Johnson with her male companion, and his statements to her sister and other Madison House residents about them.

193.    The building manager admitted to the FHB during its investigation that it received a letter dated May 20, 2020 from Johnson claiming that FELICIANO was sexually harassing her.

194.    On the building manager's advice, Johnson reported to the White Plains Police Department on or about May 27, 2020 that FELICIANO was harassing her, and provided a police report regarding same to the building manager.

195.    The building manager told the FHB during its investigation that she did not address Johnson's allegations with FELICIANO because he did not like to communicate with her.

196.    MAURO stated to the FHB during its investigation that she told the building manager that Johnson's May 20, 2020 letter, and the police report, were forwarded to CMHC's

attorney, but that no one from CMHC spoke with FELICIANO about Johnson's sexual harassment allegations because he was "already on the way out".

197.    Johnson alleges that after she complained about FELICIANO's behavior, he retaliated against her by telling other Madison House residents that she had submitted complaints against him, and that he spoke about her in a derogatory manner.

198.    Johnson alleges that on or about June 2020, she changed the locks to her apartment door out of concern for the safety of her and her daughter, because FELICIANO, as Madison House Superintendent, could access her apartment.

199.    Johnson alleges that on or about June 2020, FELICIANO blocked her exit from the laundry room to intimidate her, and that when she could finally exit, he said to her "he's a bum and a clown". Johnson alleges that FELICIANO was referring to her male companion in said statement.

200.    Johnson alleges that on or about June 2020, she was driving with her daughter behind FELICIANO, and he would not let her pass him, and that when she exited her vehicle, he parked nearby to "provoke a response."

201.    Johnson alleges that on or about June 22, 2020, she spoke with MAURO and told her that she did not want FELICIANO in her apartment for any reason, whereby MAURO sent a letter to FELICIANO stating the he was prohibited from Johnson's apartment, and the apartment of another female Madison House resident.

202.    Johnson alleges that on or about June 24, 2020, FELICIANO approached her sister about the letter MAURO sent him. Johnson further alleges that on that same day, she received a text message from a Madison House resident informing her that FELICIANO told the

resident that Johnson had filed a complaint against him, and that he was prohibited from entering her apartment.

203.    Johnson alleges that on or about June 25, 2020, FELICIANO approached her mother to attempt to discuss Johnson's May 20, 2020 letter to the building manager, but her mother would not discuss the matter with him.

204.    By letter dated June 25, 2020, Johnson notified the building manager of the above June 2020 incidents (*See* ¶¶ 207-211, *infra*), and spoke to her about them on said date.

**4. Avilez**

**a) Procedural History**

205.    On June 23, 2021 and pursuant to WCFHL § 700.28 (A)(1), Avilez filed a Verified Complaint with the FHB alleging that Defendants violated, and were continuing to violate WCFHL §§ 700.21 and 700.23.

206.    Avilez alleges that FELICIANO, individually and as Madison House Superintendent, sexually harassed her based on her female gender, and retaliated against her for rejecting his sexual advances and/or because she reported his acts of harassment and discrimination to the Owner and Management Defendants.

207.    Avilez further alleges that since 2016, the Owner and Management Defendants knew, or should have known, about FELICIANO's discriminatory behavior, but refused and/or failed to take any meaningful steps to stop it.

208.    On or about July 19, 2021 MHDFC and MHA submitted a Position Statement in response to the Complaint.

209.    On or about July 20, 2021, CHMC, MAURO, and CONROY submitted a Position Statement in response to the Complaint.

29

210.     On November 12, 2021 and pursuant to WCFHL § 700.28(F), the FHB issued a Determination and Order, finding Probable Cause to support the above allegations in the Complaint.

**b) Discrimination Against Avilez**

211.     Avilez alleges that FELICIANO began sexually harassing her in 2013 shortly after he was hired as Superintendent of Madison House.

212.     Avilez alleges that FELICIANO would speak to her in a "suggestive way", would wait outside her apartment door, and block her passageway.

213.     Avilez alleges that in or about 2016, she told FELICIANO that his sexual advances were unwanted and unwelcome.

214.     Avilez alleges that FELICIANO harassed her and engaged in an aggressive verbal assault campaign against her.

215.     Avilez alleges that FELICIANO would call her a "bitch", "pig", "whore", and a "crackhead puta".

216.     Avilez alleges that FELICIANO threatened her, saying, "I'm going to make sure you get out of this building."

217.     Avilez sent written correspondence to the building manager at CHMC, complaining of FELICIANO's behavior, including correspondence dated May 2, 2019, September 16, 2019, September 25, 2019, and April 14, 2020.

218.     Avilez also alleges that she also made verbal complaints to CHMC about FELICIANO's behavior.

**C. Sanchala's Complaint as FHB Executive Director**

**a) Procedural History**

219.    On June 26, 2020 and pursuant to WCFHL § 700.28(A)(3), Sanchala, as Executive Director of the FHB, filed a Verified Complaint with it alleging that Defendants violated, and were continuing to violate, WCFHL §§ 700.21 and 700.23.

220.    Pursuant to the HUD / Commission Agreement and § 810 of the Act, the Complaint was forwarded to, and dual-filed with HUD on June 29, 2020.

221.    Pursuant to the HUD / Commission Agreement, both Complaints were concurrently investigated by the FHB.

222.    Sanchala alleges in relevant part that the defendants engaged in a pattern or a series of unlawful discriminatory real estate practices affecting the rights of more than one person at Madison House, because of their gender as female, and/or marital statuses as single, and/or status as victims of sexual abuse.

223.    Specifically, Sanchala alleges that FELICIANO, individually and as Madison House Superintendent, repeatedly sexually harassed Madison House female residents, despite them demanding to him that he stop.

224.    Further, Sanchala alleges that the Owner and Management Defendants knew or should have known about FELICIANO's harassment and discrimination, and failed to take appropriate action to stop it.

225.    Finally, Sanchala alleges that FELICIANO retaliated against the Madison House residents who refused his sexual advances or complained about him sexually harassing them.

226.    On or about August 31, 2020, CHMC and MAURO submitted a Position Statement in response to the Complaints.

31

227.    On or about September 16, 2020, MHDFC submitted a Position Statement in response to the Complaints.

228.    On or about September 24, 2020, FELICIANO submitted a Position Statement in response to the Complaints.

229.    On December 14, 2020 and pursuant to WCFHL § 700.28(B), Sanchala filed an Amended Verified Complaint to add MHA as a Respondent.

230.    On March 5, 2021 and pursuant to WCFHL § 700.28(F), the FHB issued a Determination and Order, finding Probable Cause to support the above allegations in the Complaints.

**b) The Defendants' Pattern or Series of Unlawful Discrimination Against More Than Resident at Madison House**

231.    Sanchala adopts in their entirety and incorporates by reference, the allegations of the private complainants in support of his Complaint as Executive Director of the FHB.

232.    In the course of the FHB investigating the Rosario Complainant's Complaint, a female Madison House resident ("Resident No. 1") informed the FHB that on or about 2020, FELICIANO offered her $200.00 in exchange for sex, and stated to her, "you have a big ass, I'll give you $200.00 if you let me fuck you in it."

233.     Resident No. 1 stated that she reported the incident to the Management Defendants, but they took no action.

234.     Resident No. 1 stated that shortly after she complained to Management Defendants about FELICIANO, FELICIANO began intimidating and threatening her with physical violence. Resident No. 1 became reluctant to further discuss FELICIANO's behavior towards her and expressed fear of retaliation.

235.    The building manager stated that another female Madison House resident ("Resident No. 2") complained to her that FELICIANO offered her $100.00 in exchange for sex. The building manager stated that she told Resident No. 2 to put her complaint in writing.

236.    The building manager stated that she later received an unsigned letter containing similar allegations, but took no action on the letter because it was unsigned and "anonymous".

237.    The building manager stated that she believes she threw the letter in the garbage, because she did not believe it would "help" the Management Defendants terminate FELICIANO.

238.    The building manager stated that a third female Madison resident ("Resident No. 3") complained to her that FELICIANO commented to her: "damn, you have a big ass". The building manager stated that she told Resident No. 3 to put the complaint in writing, but Resident No. 3 did not do so. The building manager admitted that she took no further action on Resident No. 3's complaint.

## VII.  CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION

239.    Plaintiff repeats, re-alleges, and incorporates by reference all of the prior allegations of this pleading as if fully set forth at length herein.

240.    FELICIANO violated 42 USCS § 3604(b) and 24 C.F.R. § 100.50(b)(2), by discriminating against the private complainants, Residents No. 1-3, and other Madison House residents in the terms, conditions, or privileges of their rental of Madison House as a dwelling, or in the provision of services or facilities in connection therewith, by making statements about them which indicate, directly or indirectly, discrimination as to their sex as female, and/or familial status.

## AS AND FOR A SECOND CAUSE OF ACTION

241.    Plaintiff repeats, re-alleges, and incorporates by reference all of the prior allegations of this pleading as if fully set forth at length herein.

242.    FELICIANO violated 24 C.F.R.100.600(a)(1). by engaging in quid pro quo sexual harassment against the private complainants, Residents No. 1-3, and other Madison House residents, and constituting unwelcome sexual requests or demands by him, where submission to the request or demand, either explicitly or implicitly, was made a condition related to the terms, conditions, or privileges of Madison House as a housing accommodation, or the provision of services or facilities in connection therewith.

## AS AND FOR A THIRD CAUSE OF ACTION

243.    Plaintiff repeats, re-alleges, and incorporates by reference all of the prior allegations of this pleading as if fully set forth at length herein.

258.    FELICIANO violated 24 C.F.R. § 100.600(a)(2), by engaging in hostile environment harassment against the private complainants, Residents No. 1-3, and other Madison House residents, and constituting unwelcome conduct by him that was sufficiently severe or pervasive as to interfere with their use or enjoyment of Madison House as a dwelling, or the provision or enjoyment of services or facilities in connection therewith.

## AS AND FOR A FOURTH CAUSE OF ACTION

259.    Plaintiff repeats, re-alleges, and incorporates by reference all of the prior allegations of this pleading as if fully set forth at length herein.

260.    FELICIANO violated 42 U.S.C. § 3617 by intimidating, threatening, or interfering with the private complainants, Residents No. 1-3, and other Madison House residents

34

in their exercise or enjoyment of, or on account of said persons having exercised or enjoyed, any

right granted or protected by the Act.

## AS AND FOR A FIFTH CAUSE OF ACTION

261.   Plaintiff repeats, re-alleges, and incorporates by reference all of the prior

allegations of this pleading as if fully set forth at length herein.

262.   The Owner Defendants violated 24 C.F.R. § 100.7(a)(1)(ii), by otherwise making

unavailable or denying, Madison House as a dwelling to the private complainants, Residents No.

1-3, and other Madison House residents, by failing to take prompt action to correct and end one

or more discriminatory housing practices by FELICIANO as their agent, against said persons,

where the Owner Defendants knew or should have known of his discriminatory conduct.

## AS AND FOR A SIXTH CAUSE OF ACTION

263.   Plaintiff repeats, re-alleges, and incorporates by reference all of the prior

allegations of this pleading as if fully set forth at length herein.

264.   The Owner Defendants violated 24 C.F.R § 100.7(a)(1)(iii), by otherwise making

unavailable or denying Madison House as a dwelling to the private complainants, Residents No.

1-3, and other Madison House residents, by failing to take prompt action to correct and end one

or more discriminatory housing practices by FELICIANO against said persons, where the Owner

Defendants knew or should have known of his discriminatory conduct and had the power to

correct it.

## AS AND FOR A SEVENTH CAUSE OF ACTION

265.   Plaintiff repeats, re-alleges, and incorporates by reference all of the prior

allegations of this pleading as if fully set forth at length herein.

266.    The Owner Defendants are liable under 24 C.F.R. § 100.7(b) because of one or more discriminatory acts committed by FELICIANO as their agent, against the private complainants, Residents No. 1-3, and other Madison House residents, regardless of whether the Owner defendants knew or should have known of his discriminatory conduct.

## AS AND FOR AN EIGHTH CAUSE OF ACTION

267.    Plaintiff repeats, re-alleges, and incorporates by reference all of the prior allegations of this pleading as if fully set forth at length herein.

268.    The Management Defendants violated 24 C.F.R. § 100.7(a)(1)(ii), by otherwise making unavailable or denying, Madison House as a dwelling to the private complainants, Residents No. 1-3, and other Madison House residents, by failing to take prompt action to correct and end one or more discriminatory housing practices by FELICIANO as their employee and/or agent, against said persons, where the Management Defendants knew or should have known of his discriminatory conduct.

## AS AND FOR A NINTH CAUSE OF ACTION

269.    Plaintiff repeats, re-alleges, and incorporates by reference all of the prior allegations of this pleading as if fully set forth at length herein.

270.    The Management Defendants violated 24 C.F.R § 100.7(a)(1)(iii), by otherwise making unavailable or denying, Madison House as a dwelling to the private complainants, Residents No. 1-3, and other Madison House residents, by failing to take prompt action to correct and end one or more discriminatory housing practices by FELICIANO against said persons, where the Management Defendants knew or should have known of his discriminatory conduct and had the power to correct it.

## AS AND FOR A TENTH CAUSE OF ACTION

271.    Plaintiff repeats, re-alleges, and incorporates by reference all of the prior allegations of this pleading as if fully set forth at length herein.

272.    The Management Defendants are liable under 24 C.F.R. § 100.7(b) because of the discriminatory acts committed by FELICIANO as their employee and/or agent, against the private complainants, Residents No. 1-3, and other Madison House residents, regardless of whether the Management Defendants knew or should have known of his discriminatory conduct.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION

273.    Plaintiff repeats, re-alleges, and incorporates by reference all of the prior allegations of this pleading as if fully set forth at length herein.

274.    FELICIANO violated WCFHL § 700.21(A)(2) and (4) by engaging in quid pro quo sexual harassment against the private complainants, Residents No. 1-3, and other Madison House residents, based on their sex as female, and/or marital status as single, and constituting unwelcome sexual requests or demands where submission to the request or demand, either explicitly or implicitly, is made a condition related to the terms, conditions, or privileges of Madison House as a housing accommodation.

## AS AND FOR A TWELFTH CAUSE OF ACTION

275.    Plaintiff repeats, re-alleges, and incorporates by reference all of the prior allegations of this pleading as if fully set forth at length herein.

276.    FELICIANO violated WCFHL § 700.21(A)(2) and (4), by engaging in hostile environment harassment against the private complainants, Residents No. 1-3, and other Madison House residents, and constituting unwelcome, extensive, and unsolicited conduct by him in the

form of sexual advances, requests for sexual favors, and other verbal or physical conduct of a

sexual nature, which they viewed as undesirable or offensive, and which affected the terms,

conditions or privileges of Madison House as a housing accommodation, or the furnishing of

facilities or services in connection therewith.

## AS AND FOR A THIRTEENTH CAUSE OF ACTION

277.    Plaintiff repeats, re-alleges, and incorporates by reference all of the prior

allegations of this pleading as if fully set forth at length herein.

278.    FELICIANO violated WCFHL § 700.21(A)(5) by making or declaring, one or

more statements which indicate, directly or indirectly, discrimination as to the private

complainants, Residents No. 1-3, and other Madison House residents based on their actual or

perceived gender as female, and/or marital status as single, and/or familial status, and/or status as

a victim of sexual abuse.

## AS AND FOR A FOURTEENTH CAUSE OF ACTION

279.    Plaintiff repeats, re-alleges, and incorporates by reference all of the prior allegations

of this pleading as if fully set forth at length herein.

280.    FELICIANO violated WCFHL § 700.21(10) by intimidating, threatening or

interfering with the private complainants, Residents No. 1-3, and other Madison House

residents, in their exercise of any right granted to them in WCFHL § 700.21.

## AS AND FOR A FIFTEENTH CAUSE OF ACTION

281.    Plaintiff repeats, re-alleges, and incorporates by reference all of the prior allegations of this pleading as if fully set forth at length herein.

282.    FELICIANO violated WCFHL § 700.23(B) by intimidating, threatening, interfering with, retaliating or discriminating against, or attempt to intimidate, threaten, interfere with, retaliate or discriminate against, the private complainants, Residents No. 1-3, and other Madison House residents, in their exercise or enjoyment of, or on account of their having exercised or enjoyed, any right granted or protected by the WCFHL, or because said persons opposed any practice forbidden under the WCFHL.

**WHEREFORE**, it is respectfully requested that this Honorable Court enter Judgment in favor of Plaintiff Tejash Sanchala as Executive Director of the Westchester County Fair Housing Board, pursuant to 42 USCS §§ 3604(a), 3604(b), and 3617; 24 C.F.R. §§ 100.7(a)(1)(ii) and (iii), 100.7(b), 100.50(b)(2) and (3), 100.400(c)(5) and (6), 100.600(a)(1) and (2), and WCFHL §§ 700.21(A)(2), (4) and (5), 700.21(10), and 700.23(B), and prays that an Order be issued that:

a.    Declares that the discriminatory housing practices of Defendants, as set forth above, violated the Act, as amended, 42 U.S.C. § 3601, *et seq*., and the Westchester County Fair Housing Law;

b.    Requiring Defendants to take all such affirmative action that the Honorable Court finds necessary to remedy Defendants' discriminatory conduct;

c.    Awarding such damages that will fully compensate all of the private complainants for their damages caused by the Defendants' discriminatory conduct;

d.    Awarding the maximum civil penalty against each Defendant for each violation of the Act and the Westchester County Fair Housing Law;

e.     Awarding costs to be paid by Defendants in the form of reimbursement for actual

expenses incurred, and reasonable attorneys' fees; and

f.     Awarding such other and further relief that this Honorable Court may deem just

and proper.

DATED:     White Plains, New York          **JOHN M. NONNA**
           January 20, 2023                Westchester County Attorney
                                           *Attorney for Plaintiff Tejash Sanchala as*
                                           *Executive Director of the Westchester County*
                                           *Fair Housing Board*

                                    By:  ___*S / Christopher J. Inzero*___
                                           Christopher J. Inzero
                                           Sr. Assistant County Attorney, of Counsel
                                           Michaelian Office Building
                                           148 Martine Avenue, Room 600
                                           White Plains, New York 10601
                                           T: (914) 995-3671
                                           F: (914) 995-3132
                                           cji3@westchestergov.com